UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

CHRISTOPHER BOWDEN,
     Plaintiff,

vs.                    Case No.: 3:20cv5355/LAC/EMT

R. KOSSIE, et al.,
     Defendants.
_____/

## REPORT AND RECOMMENDATION

This matter is before the court on a motion for summary judgment filed by the seven Defendants who have appeared in this case (*see* ECF No. 50).[1]  Plaintiff filed a response in opposition to the motion for summary judgment (ECF No. 57).

The case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters. *See* N.D. Fla. Loc. R. 72.2(C); *see also* 28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72(b).  Upon consideration of the parties' submissions and the relevant law, the undersigned concludes that Defendants' motion for summary judgment should be denied.

---

[1] Efforts to serve process upon Defendant Dustin Stewart have been unsuccessful.

## I.    BACKGROUND

Plaintiff Christopher Bowden (Bowden), proceeding pro se and in forma pauperis, commenced this case on March 31, 2020, by filing a civil rights complaint under 42 U.S.C. § 1983 (Pl.'s Compl., ECF No. 1).    Presently before the court is Bowden's Second Amended Complaint (Pl.'s Second Am. Compl., ECF No. 33). Bowden sues eight correctional officers at Santa Rosa Correctional Institution, claiming they violated his Eighth Amendment rights by using excessive force on November 22, 2017 (*id.*, pp. 7–9).  Bowden also asserts state law claims of assault and battery (*id.*, p.  9).  Bowden seeks compensatory and punitive damages (*id.*).

Defendants contend a reasonable jury would not find that their use of force was excessive because the video evidence and medical record submitted with their motion for summary judgment show that their actions were necessary to re-establish order and maintain discipline after Bowden received numerous warnings to cease his disruptive behavior (Defs.' Mot. Summ. J., pp. 1, 6–12).  They contend they thus are entitled to summary judgment on Bowden's federal constitutional claims (*id.*). Defendants additionally contend that to the extent the court finds that they engaged in excessive force, Bowden cannot recover the compensatory damages he seeks, because he suffered only de minimis physical injury (*id.*, pp.  12–16).

## II.    SUMMARY JUDGMENT STANDARD

To prevail on a motion for summary judgment, the moving party must show that the nonmoving party has no evidence to support his case or present affirmative evidence that the nonmoving party will be unable to prove his case at trial.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).  If the moving party successfully negates an essential element of the nonmoving party's case, the burden shifts to the nonmoving party to come forward with evidentiary material demonstrating a genuine issue of fact for trial.  *Id.*  The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).  A dispute is "genuine" if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.* at 248.  A fact is "material" if it "might affect the outcome of the suit under the governing law."  *Id.*

To defeat summary judgment, the nonmoving party must show more than the existence of a "metaphysical doubt" regarding the material facts.  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586.  Speculation or conjecture from a party cannot create a genuine issue of material fact.  *See Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1181 (11th Cir. 2005).  And "[a] mere scintilla of evidence in

support of the nonmoving party will not suffice to overcome a motion for summary judgment." *Young v. City of Palm Bay, Fla.*, 358 F.3d 859, 860 (11th Cir. 2004); *see also Celotex Corp.*, 477 U.S. at 324. The nonmoving party must either point to evidence in the record or present additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency. *See Celotex Corp.*, *supra*; *Owen v. Wille*, 117 F.3d 1235, 1236 (11th Cir. 1997) (Rule 56 requires the nonmoving party to go beyond the pleadings and by his or her own affidavits, or by the depositions, documents, affidavits or declarations, admissions, interrogatory answers or other materials on file, designate specific facts showing that there is a genuine issue for trial); *Hammer v. Slater*, 20 F.3d 1137 (11th Cir. 1994).

A motion for summary judgment should be granted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp.*, 477 U.S. at 322.

III.   MATERIAL FACTS FOR PURPOSES OF SUMMARY JUDGMENT[2]

The facts pertinent to the resolution of Defendants' motion for summary judgment are drawn from Bowden's verified Second Amended Complaint (Pl.'s

---

[2] Matters stated by the court as "facts" for purposes of summary judgment may not be the actual facts. *See Montoute v. Carr*, 114 F.3d 181, 182 (11th Cir. 1997).

Second Am. Compl., ECF No. 33) and the evidence in the summary judgment record, including Bowden's "Declaration in Opposition to Defendant's [sic] Motion for Summary Judgement [sic])" (Pl.'s Decl., ECF No. 54), a video from a handheld video camera (Handheld Video, ECF No. 50-1), and a medical record (FDOC Office of Health Services, Diagram of Injury, ECF No 50-2).[3] *See Perry v. Thompson*, 786 F.2d 1093, 1095 (11th Cir. 1986) (holding that specific facts pled in a sworn complaint must be considered in opposition to a motion for summary judgment).

Regarding the parties' factual positions, the court must apply the standard set forth in Rule 56(c) of the Federal Rules of Civil Procedure, which provides in relevant part:

> **(1) Supporting Factual Positions**.  A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> **(A)** citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> **(B)** showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.
> . . . .

---

[3] Bowden previously submitted a declaration (ECF No. 42), but the factual statements therein are identical to the statements in the declaration he submitted in opposition to Defendants' motion for summary judgment (Pl.'s Decl., ECF No. 54); therefore, Bowden's previously filed declaration will not be referenced in the Material Facts section.

> **(4) Affidavits or Declarations**. An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.

Fed. R. Civ. P. 56(c). If a fact cannot be presented in a form that would be admissible in evidence, it cannot be used for purposes of summary judgment. *See Macuba v. Deboer*, 193 F.3d 1316, 1322 (11th Cir. 1999); Fed. R. Civ. P. 56(c). If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court will consider the fact undisputed for purposes of the motion for summary judgment. *See* Fed. R. Civ. P. 56(e)(2).

Evidence presented by the nonmoving party in opposition to the motion for summary judgment, and all reasonable factual inferences arising from it, must be viewed in the light most favorable to him or her. *See Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Jones v. Cannon*, 174 F.3d 1271, 1282 (11th Cir. 1999). Thus, where the parties offer conflicting accounts of the events in question, the court sets forth the facts, drawn from the evidence presented, in the light most favorable to the nonmoving party. *Snow ex rel. Snow v. City of Citronelle*, 420 F.3d 1262, 1265 (11th Cir. 2005). Where, as here, there is video evidence, the court will accept facts clearly depicted in the video even if there would otherwise be a genuine issue about the existence of those facts. *See Scott v. Harris*, 550 U.S. 372, 380–81 (2007);

*Shaw v. City of Selma*, 884 F.3d 1093, 1097 n.1 (11th Cir. 2018).  Where the video does not clearly depict an event or action, and there is evidence going both ways on it, the court must take the non-moving party's version of what happened.  *See Shaw*, *supra*.

The following facts are either clearly depicted on the video or, where not clearly depicted and disputed by the parties, drawn from the evidence presented in the light most favorable to Bowden.  The use of force at issue was a cell extraction. Bowden alleges five Defendants were members of the (ten-person) cell extraction team and directly participated in the use of force, namely, Defendants Stewart, Harris, Lane, Rayburn, and Allender.  The video shows that the members of the cell extraction team are wearing grey shirts, helmets, and other protective gear.  Bowden alleges the remaining three Defendants—Kossie, Oakes, and Norris—were present but did not intervene in the use of force.  The video shows that these three Defendants are wearing white shirts.  Defendants do not dispute these facts.  Defendant Kossie is the only person who clearly introduces himself on the video.  Defendants Oakes and Norris do not introduce themselves, and neither the video nor Bowden's allegations provide a means to determine who is who.  The same is true of the cell extraction team members.  Although they introduce themselves at the beginning of the video, their names are not clearly audible.  The video shows that not all of the

Defendants were present during the entire cell extraction event, which lasted approximately thirty-three minutes.  But for purposes of summary judgment, and considering the lack of identification evidence in the summary judgment record, the court will attribute conduct by one or more cell extraction team (CET) members to "CET Defendants."

On November 22, 2017, Bowden's cellmate, Inmate Linford Spence, refused an order to submit to hand restraints to facilitate his departure from the cell (Pl.'s Second Am. Compl. ¶¶ 1, 3).[4]  Defendant Lieutenant Kossie obtained authorization from an official named "Neel" to utilize a CET (Handheld Video 12:32:02 p.m.– 12:33:06 p.m.).[5, 6]  The ten members of the CET introduced themselves and stated their duties during the cell extraction (as previously noted, this information is not clearly audible on the video) (Handheld Video 12:33:15–12:35:30).  The first two members of the CET carried concave shields (Handheld Video 12:35:38).  The CET

---

[4] Facts taken from Bowden's Second Amended Complaint are referred to by the paragraph number indicated in the Statement of Facts section (Second Am. Compl., pp. 7–8).

[5] Unless otherwise indicated, the court refers to the time stamp that appears on the handheld video on Disc 3, video files labeled VTS_01_1 and VTS_01_2.

[6] Bowden alleges Defendant Oakes authorized use of the CET (*see* Pl.'s Second Am. Compl. ¶ 3), but Bowden has not asserted a basis for his personal knowledge of who authorized the team, nor has he come forward with any evidence that shows the existence of a genuine issue of material fact as to who authorized use of the CET.  Regardless, this fact is not material for summary judgment purposes.

Case No.:  3:20cv5355/LAC/EMT

loudly made its way into the housing unit, up a stairway, and to Bowden and Spence's cell (Handheld Video 12:35:53–12:36:43).  The video clearly shows that the view into Bowden and Spence's cell was obstructed by one or more white items covering the window from the inside (as compared to the unobstructed view of an inmate standing in the window of the neighboring cell) (Handheld Video 12:36:43–12:36:48).  Bowden does not dispute that at least one mattress and some linens were covering the cell window from the inside, but he asserts that the items were not his (*see* Pl.'s Am. Br. in Opp'n to Defs.' Summ. J. Mot., p. 8).  Regardless of whose items were covering the window, there is no dispute that the window was covered.

Standing outside the cell, Defendant Kossie ordered Bowden and Spence to submit to hand restraints, but neither Bowden nor Spence audibly responded to Kossie's order, and the cell window remained covered from the inside (Handheld Video 12:36:48–12:37:01).  Defendant Oakes or Norris opened the cell door, and four members of the CET entered the cell, pushing away the items that blocked the cell window (Handheld Video 12:37:04–12:37:16; Pl.'s Decl. ₱ 4).[7]  The video

---

[7] Defendants Stewart, Harris, Rayburn, Lane, and Allender are the only members of the cell extraction team who were directly involved in the uses of force at issue in this case.  Bowden includes Major Oakes, Lieutenants Kossie, and Lieutenant Norris as Defendants because they observed and supervised the conduct of the other Defendants and did not intervene (Pl.'s Second Am. Compl. ₱ 22).  As previously noted, Lieutenant Kossie is clearly identifiable because he introduced himself at the beginning of the video.  One of the white-shirted Defendants is wearing

shows two other CET members standing in the doorway of the cell, with Defendants Oakes and Norris on both sides of these team members (Handheld Video 12:37:18). The other four CET members are seen standing to the side of the cell door ready to assist. Bowden states he and Inmate Spence attempted to run out of the cell (Pl.'s Second Am. Compl. ⁋ 2; Pl.'s Decl. ⁋ 4). The two CET members who were in the doorway, assisted by Defendants Oakes and Norris, pulled Inmate Spence out of the cell by his feet, applied wrist and ankle restraints, and moved him away from the cell door (Handheld Video 12:37:36–12:38:06). Two of the CET members who had initially entered the cell came out and assisted in securing Spence, while two of the CET members who were standing to the side of the door entered the cell (Handheld Video 12:38:14–12:38:31). Three CET members escorted Inmate Spence to the medical room, accompanied by Oakes or Norris.

The video does not show what occurred in the cell with Bowden during this time (the view into the cell is obstructed by the officers' bodies). According to Bowden, Defendants Stewart, Harris, Rayburn, Lane, and Allender knocked him to the back of the cell (Pl.'s Second Am. Compl. ⁋ 4; Pl.'s Decl. ⁋ 5). Bowden states he fell onto the floor, placed his hands behind his head, and was not combative,

a baseball cap, and the other is wearing glasses on top of his head, but, again, it is unclear which one is Oakes and which one is Norris.

aggressive, or threatening (Pl.'s Second Am. Compl. ¶ 4).    Bowden states Defendants Stewart, Harris, Rayburn, Lane, and Allender punched him in the head and side of his face several times, and Defendant Oakes observed but did not intervene (Pl.'s Second Am. Compl. ¶¶ 4–5).    The video shows Defendant Kossie standing in the doorway of the cell yelling to Bowden, "Stop resisting" multiple times (Handheld Video 12:38:28–12:38:35).    Bowden states the officers handcuffed him behind his back and applied ankle restraints (Pl.'s Second Am. Compl. ¶ 6; Pl.'s Decl. ¶ 6).    He states Defendants Stewart, Harris, Rayburn, Lane, and Allender continued to "beat" him in the head and body (Pl.'s Second Am. Compl. ¶ 6; Pl.s Decl. ¶ 6).

The video shows a CET member pulling or propelling Bowden's upper body out of the cell, and the two of them landing face down on the floor, with the CET member on top of Bowden (Handheld Video 12:39:42).    Bowden identifies this CET member as Defendant Harris and alleges Defendant Lane also "dragged" him from the cell (Pl.'s Decl. ¶ 7).    On the video, it appears that the lower half of Bowden's body was still in the cell at this point.    Bowden states he was upset and verbally abusive and disrespectful toward Defendants (Pl.'s Second Am. Compl. ¶ 7; Pl.'s Decl. ¶ 7).    Bowden states he "choked/coughed" in Defendant Harris' direction and was slammed face first into the floor, causing a large lump on his forehead and his

upper denture to dislodge (Pl.'s Second Am. Compl. ⁋ 7; Pl.'s Decl. ⁋ 7). Bowden

states Defendant Norris stepped on his denture (Pl.'s Second Am. Compl. ⁋ 8; Pl.'s

Decl. ⁋ 10). Another Defendant joined Defendant Harris in maintaining pressure to

keep Bowden's head and body on the floor, while a third Defendant applied pressure

to Bowden's Achilles tendon until a "spit shield" (a white cloth mask) could be

applied to Bowden's mouth (Handheld Video 12:39:42–12:41:13; Pl.'s Second Am.

Compl. ⁋⁋ 9–10; Pl.'s Decl. ⁋⁋ 8, 10). Three other CET members stood by to assist,

and Defendants Kossie and either Oakes or Norris supervised (Handheld Video

12:39:42–12:41:13). The spit shield arrived, and Defendant Harris applied it to

Bowden's face (Handheld Video 12:41:13–12:41:56).

Defendants pulled Bowden to his feet and dragged him a few feet (Handheld

Video 12:41:56–12:42:14; Pl.'s Second Am. Compl. ⁋ 11). Bowden claimed he

could not walk, so four CET members repositioned themselves and carried him

down the stairs and through the housing unit to an area outside the medical room to

wait for a post-use of force medical examination (Handheld Video 12:42:14–

12:43:46; Pl.'s Second Am. Compl. ⁋ 11; Pl.'s Decl. ⁋ 11).[8] The CET members sat

---

[8] Bowden was not allegedly unable to walk due to the shackles on his ankles. Defendants submitted a video of Inmate Spence's escort from the housing unit to the medical room and from the medical to a housing unit which depicts Spence in ankle shackles (*see* ECF No. 50-1, Disc 4,

Bowden on the floor, and then ordered him to stand and attempted to assist him in standing; but Bowden still claimed he could not stand or walk (Handheld Video 12:43:46–12:44:15). Two CET members maintained custodial holds on Bowden as he sat on the floor until medical staff was available to examine him (Handheld Video 12:44:15–12:46:24). Defendant Kossie, Defendant Oakes or Norris, and three other CET members were also present. When medical staff was available, Bowden was again ordered to stand, but he claimed he could not, so four CET members carried him into the medical room and stayed in the room with Bowden (Handheld Video 12:46:23–12:46:42). Defendant Kossie was also in the room.

The events that occurred in the medical room are not captured on the video. Bowden states he complained of pain to his head, face, back, and ribs (Pl.'s Second Am. Compl. ¶ 11; Pl.'s Decl. ¶ 11). Nurse Williams, a licensed practical nurse, noted a large lump on the front of Bowden's forehead, his top denture missing, and redness and swelling to both of his wrists (FDOC Office of Health Serv., Diagram of Injury, ECF No. 50-2). Bowden states he and the CET members in the medical room (one of whom was Defendant Lane) engaged in a "disrespectful dialogue" and "exchanged coustic [sic] insults" (Second Am. Comp. ¶¶ 12–13). Bowden states

---

video file labeled VTS_01_1). Inmate Spence had no problem walking while his ankles were shackled.

after he mentioned his intent to file litigation, Nurse Williams "ended [his] exam abruptly," stating that Bowden refused treatment and, according to Bowden, did not conduct a "full body examination" (Pl.'s Second Am. Compl. ¶ 13; Pl.'s Decl. ¶ 12).

After approximately two and a half minutes in the medical room, four CET members, accompanied by Defendant Kossie, carried Bowden back to the housing unit and up the stairs to his cell, and sat him on the catwalk outside his cell (Handheld Video 12:49:17–12:52:09; Pl.'s Second Am. Compl. ¶ 14; Pl.'s Decl. ¶ 13). Defendant Kossie cleaned a white substance off the cell window that had contributed to obstructing the view into the cell (Handheld Video at 12:51:56–12:52:08). Bowden sat on the catwalk surrounded by Defendants Stewart, Harris, Lane, Rayburn, and Allender (Handheld Video 12:52:09–12:53:57; *see* Pl.'s Second Am. Compl. ¶¶ 13–14). Two Defendants maintained custodial holds by each placing one hand on each of Bowden's shoulders (*id.*). At one point, Bowden yelled, "Ow, ow, ow!" and pulled away from Defendants' custodial holds while erratically moving (Handheld Video 12:53:56–12:54:04). Defendants pushed Bowden face down onto the catwalk and applied their body weight onto his body while maintaining control of his head with the concave shield (Handheld Video 12:54:04; Pl.'s Second Am. Compl. ¶¶ 15–17; Pl.'s Decl. ¶¶ 13–14). Bowden states one Defendant licked the lump on his forehead (Pl.'s Second Am. Compl. ¶ 17), but the video clearly shows

this did not happen.  Defendant Kossie placed Bowden on property restriction or "strip," so Defendants removed Bowden's clothing (by cutting it off his body) except a white privacy garment (Handheld Video 12:54:54–1:06:05; Pl.'s Second Am. Compl. ¶¶ 17–18, 20; Pl.'s Decl. ¶¶ 14–15, 17).[9]  During this process, which lasted approximately eleven minutes, Defendants continued to hold Bowden face down on the floor (Handheld Video 12:54:54–1:06:05; Pl.'s Second Am. Compl. ¶¶ 17, 20; Pl.'s Decl. ¶¶ 14–15).  Defendants Oakes and Norris returned to the scene.  Bowden states Defendant Rayburn "groped him along the butt" (Pl.'s Second Am. Compl. ¶ 18; Pl.'s Decl. ¶ 15), but the video clearly shows that this did not happen.

Defendants lifted Bowden to his feet, carried him into the cell, and placed him face down on the lower metal bunk (Handheld Video 1:06:05–1:06:41; Pl.'s Second Am. Compl. ¶¶ 18–19; Pl.'s Decl. ¶¶ 15–16).  Bowden states Defendants Stewart, Harris, Rayburn, and Lane pressed his body into the metal bunk with the concave shield and "sucker punched" him throughout his body as Defendant Allender bent his left big toe (Pl.'s Second Am. Compl. ¶¶ 19–20; Pl.'s Decl. ¶ 16).  The video shows that there were two brief struggles during the three-minute period that the officers were removing the ankle and wrist restraints while Bowden was face down

---

[9] The first video file ends at 1:01:06 and the second video file picks up at 1:01:07.

on the bunk (Handheld Video 1:06:47–1:08:02).  During these two brief struggles, the video shows Defendants leaning over Bowden's body on the bunk, making limited movements with their arms (*id.*).  Bowden is heard yelling, "Ow, ow, ow!" (*id.*).  Once the wrist and ankle restraints were removed, Defendants backed out of the cell one by one (Handheld Video 1:08:46–1:09:01).  Contrary to Bowden's claims that he could not walk, the video depicts him on his feet at the cell window a few seconds after the officers left (Handheld Video 1:09:11).  The video depicts Bowden wiping more of the white residue off the inside of the cell window (Handheld Video 1:09:42).

The video clearly shows that less than one minute after Defendants left Bowden's cell, a member of the medical staff came to the cell front (Handheld Video on Disc 3 at 1:09:48).[10]  The medical staff member talked to Bowden through the cell window and remained for just over one minute (Handheld Video on Disc 1 at 1:11:57–1:13:10).  Bowden admits he had no clothing except the privacy garment. In the video, Bowden appears to be showing the medical staff member his body, and the medical staff member appears to be documenting her observations (*id.*).

---

[10] The video file on Disc 3 ends when the medical staff member is approaching Bowden's cell.  A video file on Disc 1 depicts the same scene and continues (Disc 1,  file named VTS_01_0), but the time stamp of the video on Disc 1 is two minutes and nine seconds ahead of the time stamp of the video on Disc 3.

Bowden asserts as a result of the use of force, he suffered a large bump on his forehead, a broken upper denture, black eye, swelling of his wrists, ankles, and face, pain in his ribs and abdomen, skinned knees, a cut on his hand, and bruising to his torso, arms, and legs (Pl.'s Second Am. Compl. ¶ 21; Pl.'s Decl. ¶ 20).

IV.    DISCUSSION

Defendants contend they are entitled to summary judgment on Bowden's federal constitutional claims because the video demonstrates that their uses of force were reasonable and the minimum necessary to maintain order and restore discipline, and thus were not excessive in violation the Eighth Amendment (Defs' Mot. Summ. J., pp. 1, 6–12).   Defendants rely exclusively on the video and argue that it contradicts Bowden's allegations "in nearly every aspect" (*id.*, p. 10).   Defendants additionally contend that to the extent the court determines they engaged in excessive force, Bowden cannot recover the compensatory damages he seeks, because he suffered only de minimis physical injury (*id.*, pp. 12–16).

Bowden contends the video does not blatantly contradict his version of the uses of force, and under his version, the force was excessive (Pl.'s Resp. to Mot. Summ. J., pp. 6–9).   He also contends his injuries were not de minimis (*id.*, p. 10).

### A.    Whether A Reasonable Juror Could Find That Defendants Used Excessive Force

The core judicial inquiry for an Eighth Amendment excessive-force claim in a prison setting is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010) (citation omitted).  In determining whether force was applied maliciously and sadistically to cause harm, the court considers five factors:  (1) the extent of injury, (2) the need for the application of force, (3) the relationship between that need and the amount of force used, (4) the extent of the threat to the safety of staff and inmates as reasonably perceived by the responsible officials on the facts known to them, and (5) any efforts made to temper the severity of a forceful response. *Hudson v. McMillian*, 503 U.S. 1, 7–8 (1992); *see also Whitley v. Albers*, 475 U.S. 312, 321 (1986).

"The Eighth Amendment's prohibition of cruel and unusual punishments necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind."  *Hudson*, 503 U.S. at 9–10 (internal quotation marks and citation omitted).  Indeed, not "every malevolent touch by a prison guard gives rise to a federal cause of action." *Id.* at 9 (citation omitted).  While a lack of serious injury

is relevant to the inquiry, "[i]njury and force . . .are only imperfectly correlated and it is the latter that ultimately counts." *Wilkins*, 559 U.S. at 38.

"[A]n officer can be liable for failing to intervene when another officer uses excessive force." *Priester v. City of Riviera Beach, Fla.*, 208 F.3d 919, 924 (11th Cir. 2000); *Ensley v. Soper*, 142 F.3d 1402, 1407–08 (11th Cir. 1998). However, this liability arises only when the officer is in a position to intervene and fails to do so. *See Keating v. City of Miami*, 598 F.3d 753, 764 (11th Cir. 2010); *see also Fils v. City of Aventura*, 647 F.3d 1272, 1290 n.21 (11th Cir. 2011); *Brown v. City of Huntsville*, 608 F.3d 724, 740 n.25 (11th Cir. 2010) ("Because the relevant events happened so quickly, the record does not reflect any point at which [the officer] could have intervened to prevent [another officer's] use of excessive force . . . .").

After careful review of the video, the undersigned disagrees with Defendants' assertion that it contradicts Bowden's factual allegations "in nearly every aspect." For example, Bowden alleges that when Defendants Stewart, Harris, Rayburn, Lane, and Allender entered the cell, they knocked him to the back of the cell, and he fell onto the floor and placed his hands behind his head. Bowden states Defendants Stewart, Harris, Rayburn, Lane, and Allender then punched him in the head and side of his face several times. He states the officers handcuffed him behind his back and applied ankle restraints and continued to punch him in the head and body. The video

does not foreclose Bowden's version of the facts, because the view into the cell is obstructed by the officers' bodies.

As another example, Bowden alleges Defendants used excessive force when they returned him to the cell and removed the restraints. Bowden alleges when Defendants Stewart, Harris, Rayburn, and Lane carried him into the cell, they pressed his body into the metal bunk with the concave shield, "sucker punched" him throughout his body, and bent his left big toe. The video shows that there were two brief struggles during this period. It shows Defendants leaning over Bowden's body on the bunk, making limited movements with their arms, and Bowden is heard yelling, "Ow, ow, ow!" Again, the video does foreclose Bowden's version of the facts.

The Eleventh Circuit recently issued an unpublished opinion in a somewhat similar case, *Pullen v. Osceola Cnty.*, No. 19-11448, 2021 WL 2461828 (11th Cir. June 17, 2021), in which the court concluded that the evidence was sufficient to survive summary judgment. In *Pullen*, a four-man team extracted Pullen from his cell after he covered the window of his cell with toilet paper and refused an order to "cuff up." *Id.* at *1–2. According to Pullen's version (the video did not depict what occurred in the cell), after the extraction team entered his cell, he laid on the ground with his hands behind his back and the officers continued to repeatedly punch him

"over 200 times over a period of about 7 minutes, until he became unconscious." *Id.* at *3–4 & n.3 (alternations omitted). Pullen refused to walk to the medical unit, so the officers carried him there. *Id.* at *1. Pullen was later transported to a local hospital, where he received five CT scans of his brain, and was diagnosed with a concussion, subdural hematoma, and subcutaneous hematoma and kept in a neurological intensive care unit for three days. *Id.* at *1–2.

The Eleventh Circuit concluded there were genuine disputes of material fact as to whether Pullen resisted the officers' attempts to subdue him and the amount of force the officers used during the incident. 2021 WL 2461828, at *3. The court held that Pullen's allegations were sufficient to demonstrate, for purposes of summary judgment, that the officers violated his Eighth Amendment rights. *Id.* In so holding, the court noted the following:

> The officers quibble with several of Pullen's factual claims, which they assert are contradicted by the record. For example, the officers argue that video of the incident contradicts Pullen's claims that he was dropped several times while being carried to the medical unit, he lost consciousness during the incident, officers placed a shield on his back and then stood on the shield, and the confrontation lasted for about seven minutes. Even assuming these factual claims are contradicted by the record, Pullen's core factual claims—that he did not resist the officers' attempts to subdue him and that the officers repeatedly struck him for several minutes after he had been subdued—are not contradicted by the record and are dispositive . . . .

2021 WL 2461828, at *3 n.4.

The facts of the instant case are different than those of *Pullen* in some respects. Despite these differences, the "core factual claims" are the same as in *Pullen*, i.e., that Bowden did not resist Defendants' attempts to subdue and restrain him, and then unrestrain him after they returned him to the cell, yet Defendants continued to strike him. According to the Eleventh Circuit, these facts are "dispositive." Accepting Bowden's version of the facts as true, there is a genuine issue of material fact regarding the nature and amount of force used by Defendants Stewart, Harris, Lane, Rayburn, and Allender. This issue of material fact precludes summary judgment in Defendants' favor on Bowden's excessive force claim. *See Williams v. Burton*, 943 F.2d 1572, 1576 (11th Cir. 1991) ("[O]nce the necessity for the application of force ceases, any continued use of harmful force can be a violation of the Eighth Amendment . . . , and any abuse directed at the prisoner after he terminates his resistance to authority is an Eighth Amendment violation."); *Danley v. Allen*, 540 F.3d 1298, 1309 (11th Cir. 2008) ("When jailers continue to use substantial force against a prisoner who has clearly stopped resisting—whether because he has decided to become compliant, he has been subdued, or he is otherwise incapacitated—that use of force is excessive."), *overruled in part on other grounds as recognized by Randall v. Scott*, 610 F.3d 701, 709 (11th Cir. 2010); *see also, e.g., Pullen*, 2021 WL 2461828, at *4.

With respect to the supervisory Defendants, i.e., Kossie, Oakes, and Norris, it is clear from the video that Defendant Kossie and at least one of the other two Defendants, if not both, are present during much of the cell extraction event. None of these Defendants argue the lack of a reasonable opportunity to intervene, and the video does not foreclose Bowden's assertion that they could have intervened. Therefore, Defendants Kossie, Oakes, and Norris have not demonstrated they are entitled to summary judgment on Bowden's Eighth Amendment claims against them.

### B.    Whether Bowden May Recover Compensatory Damages

Defendants contend that to the extent the court determines they engaged in excessive force, Bowden cannot recover the compensatory damages he seeks, because he suffered only de minimis physical injury (Defs.' Mot. Summ. J., pp. 12–16).

Title 42 U.S.C. § 1997e(e) provides: "No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." The phrase "Federal civil actions" means all federal claims, including constitutional claims. *Napier v. Preslicka*, 314 F.3d 528, 532 (11th Cir. 2000) (citation omitted). It applies "regardless of the cause of action, or alleged

misconduct, or source of law." *Hoever v. Marks*, 993 F.3d 1353, 1358 (11th Cir. 2021).  Where a prisoner plaintiff alleges constitutional violations, he is prevented under § 1997e(e) from seeking compensatory damages in the absence of a physical injury.  *Smith v. Allen*, 502 F.3d 1255, 1271 (11th Cir. 2007), *abrogated on other grounds by Sossamon v. Texas*, 563 U.S. 277 (2011).

"In order to avoid dismissal under § 1997e(e), a prisoner's claims for emotional or mental injury must be accompanied by allegations of physical injuries that are greater than de minimis." *Mitchell v. Brown & Williamson Tobacco Corp.*, 294 F.3d 1309, 1312–13 (11th Cir. 2002).  The Eleventh Circuit fuses the physical injury analysis under section 1997e(e) with the framework set out by the Supreme Court in *Hudson v. McMillian*, 503 U.S. 1 (1992) for analyzing claims brought under the Eighth Amendment for cruel and unusual punishment, and requires a showing of physical injury that is more than de minimis, but not significant, in order to satisfy § 1997e(e)'s physical injury requirement.  *Harris v. Garner*, 190 F.3d 1279, 1286 (11th Cir. 1999), *vacated*, *reh'g en banc granted*, 197 F.3d 1059 (11th Cir. 1999) (mem.), *opinion reinstated in relevant part*, 216 F.3d 970 (11th Cir. 2000) (en banc).

Bowden alleges he suffered a black eye, swelling of his face, a large bump on his forehead, broken upper dental plate, bruising to his torso, arms, and legs, swelling of his wrists and ankles from the restraints, a cut on his hand, skinned knees, and

pain in his head, face, back, and ribs. Bowden's medical record documents the large lump on his forehead, "knocked out" dental plate, and redness and swelling of both wrists. Bowden contends he did not receive a full body examination, and there appears to be no dispute about that. Further, some of the injuries Bowden alleges he suffered may not have been immediately observable.

Although a close call, the undersigned concludes that the evidence concerning Bowden's injuries, viewed in the light most favorable to him, is sufficient to exceed the de minimis legal threshold. Therefore, § 1997e(e) does not bar Bowden's request for compensatory damages at this stage of the case.

V.    CONCLUSION

Bowden has shown a genuine issue of material fact for trial with respect to his excessive force claim against Defendants. Further, Bowden's request for compensatory damages related to this use of force is not barred by § 1997e(e) at this stage of the case. Therefore, Defendants' motion for summary judgment should be denied.

For the aforementioned reasons, it is respectfully **RECOMMENDED**:

1.    That Defendants' motion for summary judgment (ECF No. 50) be **DENIED.**

2.      That the clerk of court recommit this matter to the magistrate judge for further proceedings on Plaintiff's claims.

At Pensacola, Florida this 27<u>th</u> day of July 2021.


/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**


## <u>NOTICE TO THE PARTIES</u>

**Objections to these proposed findings and recommendations must be filed within fourteen days of the date of the Report and Recommendation.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control</u>.  An objecting party must serve a copy of the objections on all other parties.  A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**